WOLPERT SCHREIBER MCDONNELL PC
Thomas G. Wolpert, Esquire
Attorney I.D. No. 68848
527 Main Street
Royersford, PA 19468
(T) 610-792-3304/(F) 610-792-3306
thomas@WSM.law

Attorney for Plaintiff – Robert Pierce

| | |
|---|---|
| ROBERT PIERCE<br>76 Proctor Road<br>Alstead, NH 03602<br>Plaintiff | : UNITED STATES DISTRICT COURT,<br>: EASTERN DISTRICT OF PENNSYLVANIA<br>:<br>: DOCKET NO.: ________________ |
| v. | : |
| AMETEK, INC.<br>1100 Cassatt Road<br>Berwyn, PA 19312-1177 | : |
| and | : |
| AMETEK PRECITECH, INC.<br>44 Blackbrook Road<br>Keene, New Hampshire 03431<br>Defendants | : |

# COMPLAINT

Plaintiff, Robert Pierce, by and through his attorney, Thomas G. Wolpert, Esquire, hereby brings this Civil Action – Complaint against Defendants, Ametek, Inc. and Ametek Precitech, Inc., upon the causes of action of which the following is a statement:

## PARTIES

1. Plaintiff, Robert Pierce (hereinafter "Plaintiff Pierce"), is an adult individual with a principal place of residency at 76 Proctor Road, Alstead, New Hampshire 03602.

2. Defendant, Ametek, Inc., is a corporate entity duly registered to conduct business in this Commonwealth with its principal place of business located at 1100 Cassatt Road, Berwyn, Chester County, Pennsylvania 19312-1177.

3. Defendant, Ametek Precitech, Inc., is a corporate entity and/or subsidiary of Defendant Ametek, Inc., which is duly registered to conduct business in New Hampshire with its principal place of business located at 44 Blackbrook Road, Keene, New Hampshire 03431.

4. Defendants, Ametek, Inc. and Ametek Precitech, Inc., hereinafter will be referred to as "Defendant Ametek."

**JURISDICTION**

5. Jurisdiction is proper based upon 28 U.S.C.A. § 1331 – the district court shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

6. Plaintiff Pierce seeks relief under the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621, et. seq.) as well as relief under the Pennsylvania Human Relations Act (43 P.S. § 951, et. seq.).

7. Venue is proper in this District as Defendant Ametek's principal place of business is located in Berwyn, Chester County, Pennsylvania. *See,* 28 U.S.C.A. § 1391.

**STATEMENT OF FACTS**

8. At all relevant times hereto, Plaintiff Pierce was hired as a Mechanical Assembler/Machine Builder (hereinafter "Mechanical Assembler") employed by Defendant Ametek at its subsidiary located in New Hampshire; i.e., 44 Blackbrook Road, Keene, New Hampshire 03431.

9. Plaintiff Pierce began employment with Defendant Ametek on or about April 18, 2022. *See,* Hiring Letter, dated April 4, 2022, attached hereto as Exhibit "1."

10. At the time of his hiring, Plaintiff Pierce was fifty-nine (59) years of age.

11. By trade, Plaintiff Pierce had over thirteen (13) years of experience in maintaining machines. *See,* Robert Pierce's Resume, attached hereto as Exhibit "2."

12. The employment at Defendant Ametek was for a position on the assembly line; a Mechanical Assembler.

13. Upon hiring, Defendant Ametek was to assign Plaintiff Pierce to a trainer to train him to be a Mechanical Assembler on its assembly line.

14. Initially, Plaintiff Pierce was supervised by Shaugh Calkins and a gentleman by the name of "Maurice."

15. Plaintiff Pierce began to receive some training on "different developments of a machine;" i.e., the noted subassemblies referenced in Plaintiff Pierce's first annual review, dated December 6, 2022. *See,* Robert Pierce's Annual Performance Review – Non-Exempt Employee (for 2022 year), Job Title – Mechanical Assembler, attached hereto as Exhibit "3."

16. Once those subassemblies were completed (as identified in Plaintiff Pierce's Annual Review), both Shaugh Calkins and Maurice informed Plaintiff Pierce that there were no available trainers to complete the additional training. *See,* Exhibit "3."

17. In January of 2023, Plaintiff Pierce again specifically questioned both Shaugh Calkins and Maurice as to when he would be further trained as a Mechanical Assembler.

18. Plaintiff Pierce was told to "hold tight."

19. In 2023, Plaintiff Pierce was assigned to assist the individual responsible for general maintenance around Defendant Ametek's facility (located in New Hampshire); i.e., Andy Paquette.

20. Plaintiff Pierce's job title was changed (some time in 2023) from Mechanical Assembler B to Maintenance Tech. *See,* Robert Pierce's Annual Performance Review – Non-Exempt Employee (for 2023 year), Job Title – Maintenance Tech, attached hereto as Exhibit "4."

21. Plaintiff Pierce assisted with such things as painting, running errands, general maintenance and received certain training pertaining to performing maintenance.[1]

22. During this time period (i.e., 2023), Plaintiff Pierce noticed that an influx of high school age/college age individuals were being hired and immediately assigned to trainers for employment as Mechanical Assemblers.

23. While assisting Andy Paquette, Plaintiff Pierce raised concerns and dissatisfaction about being moved to maintenance and not being trained as a Mechanical Assembler.

24. Whenever Plaintiff Pierce questioned Defendant Ametek (i.e., Andy Paquette) about not being assigned a trainer and being moved to maintenance, Andy Paquette warned Plaintiff Pierce not to approach upper management as he (Plaintiff Pierce) would risk losing his job.

25. Approximately six (6) months before Plaintiff Pierce was terminated (i.e., some time in early 2025), Defendant Ametek moved and/or pulled an employee named Greg Manard from the Shipping Department to be trained as a Mechanical Assembler.

26. Greg Manard was approximately thirty-seven (37) years old.

27. Defendant Ametek did not move or pull Plaintiff Pierce from the Maintenance Department despite knowing Plaintiff Pierce had been waiting for further training since January of 2023.

---

[1] On August 16, 2023, Plaintiff Pierce received a Certificate, signed by Andy Paquette, regarding training on Powered Industrial Truck(s) I, IV and V. *See,* Certificate, dated August 16, 2023, attached hereto as Exhibit "5."

28. From April of 2022 to July 23, 2025, Plaintiff Pierce received several reviews which were general in nature and resulted in no issues being brought to his attention regarding the quality of his work.

29. Plaintiff Pierce was qualified (had he been trained as promised by Defendant Ametek) to perform the responsibilities of a Mechanical Assembler.

30. On July 23, 2025, Defendant Ametek informed Plaintiff Pierce (via Christine Harrington, a General Manager, and Jennica Dunnell, a Human Resource Business Partner) that his employment was terminated.

31. On July 23, 2025, Plaintiff Pierce was presented with a Separation Letter along with a Separation Agreement & Release. *See,* July 23, 2025, Separation Letter (and Separation Agreement & Release) attached hereto as Exhibit "6."

32. Plaintiff Pierce did not sign the Separation Letter and/or the Separation Agreement & Release.

33. According to the Separation Letter, Plaintiff Pierce was being terminated as "a result of the current business circumstances." *See,* Exhibit "6."

34. Defendant Ametek's Separation Agreement & Release asked Plaintiff Pierce to waive any and all of Plaintiff Pierce's rights or remedies against Defendant Ametek in connection with Plaintiff Pierce's employment; in particular, any rights and/or remedies under the ADEA.

35. At the time of Plaintiff Pierce's termination, several other employees of Defendant Ametek were also terminated.

36. Of the eight or nine employees terminated, most, if not all, were over the age of forty (40).

37. Upon information and belief, the duties and responsibilities of the terminated employees were either distributed among the then remaining younger employees and/or said younger employees were promoted to replace those older individuals terminated.

38. Plaintiff Pierce believes, and therefore avers, that Defendant Ametek discriminated against its qualified employee, Plaintiff Pierce, based on his age, 62.

39. Upon information and belief, subsequent to Plaintiff Pierce's termination, Defendant Ametek advertised for or recruited for candidates to fill the position of Mechanical Assembler.

40. On or about September 11, 2025, Plaintiff Pierce filed a Charge of Employment Discrimination against Defendant Ametek with the Equal Employment Opportunity Commission ("EEOC"). *See,* Charge of Employment Discrimination, dated September 11, 2025, attached hereto as Exhibit "7."

41. On or about August 6, 2026, the EEOC issued its Determination and Notice of Rights Correspondence (i.e., its Right to Sue Correspondence). *See,* August 6, 2026, Determination and Notice of Rights Correspondence, attached hereto as Exhibit "8."

42. It is believed and therefore averred that the reason for Plaintiff Pierce's termination (i.e., his age) was at least a motivating factor in Defendant Ametek's decision to terminate.

43. Defendant Ametek's proffered reason (i.e., "a result of the current business circumstance") was a pretext for age discrimination.

**<u>COUNT I</u>**
**(Violation of the Age Discrimination in Employment Act – 29 U.S.C.A. § 621, et. seq.)**

44. Plaintiff Pierce hereby incorporates by reference the allegations set forth in paragraphs one (1) through forty-three (43) above as if more fully set forth hereunder at length.

45. Under the Age Discrimination in Employment Act ("ADEA") it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his/her compensation, terms, conditions, or privileges of employment, because of such individual's age. *See,* 29 U.S.C.A. § 623.

46. It is believed and therefore averred that Defendant Ametek's termination of Plaintiff Pierce was discriminatory in that Defendant Ametek's decision was based on or motivated by Plaintiff Pierce's age (i.e., age 62).

47. Thus, Defendant Ametek is in violation of the ADEA which prohibits employment discrimination based on an individual's age.

48. Plaintiff Pierce, as set forth above, was within the protected age group of forty (40) and older. *See,* 29 U.S.C.A. § 631.

49. Plaintiff Pierce was qualified for the position, in question, i.e., a Mechanical Assembler.

50. In 2023, Plaintiff Pierce was moved from the position of Mechanical Assembler to that of a Maintenance Tech while younger (i.e., high school/college age) employees were being hired as Mechanical Assemblers. Those new employees were being immediately assigned to trainers (something that Defendant Ametek via Shaugh Calkins, Maurice and Andy Paquette had previously told Plaintiff Pierce was not available).

51. In addition, not less than six (6) months prior to Plaintiff Pierce's termination (i.e., in or around January of 2025), a younger employee, Greg Manard, age thirty-seven (37), was moved and/or pulled from the Shipping Department to a Mechanical Assembler despite Defendant Ametek's knowledge that Plaintiff Pierce had been waiting for further training (and/or a move back to a Mechanical Assembler) since January of 2023.

52. Then on July 23, 2025, Plaintiff Pierce was the subject of an adverse employment action; i.e., he was terminated from his employment with Defendant Ametek.

53. In addition to the above stated acts of discrimination, of the eight or nine employees terminated by Defendant Ametek, on July 23, 2025, most, if not all, were over the age of forty (40). *See,* 29 U.S.C.A. § 631.

54. Upon information and belief, the duties and responsibilities of the employees terminated on July 23, 2025 were either distributed among the then remaining younger employees and/or said younger employees were promoted to replace those older individuals terminated on July 23, 2025.

55. Plaintiff Pierce's termination, on July 23, 2025, gives rise to an inference of age discrimination.

56. Plaintiff Pierce believes, and therefore avers, that Defendant Ametek discriminated against its qualified employee, Plaintiff Pierce and/or that the reason for Plaintiff Pierce's termination (i.e., his age) was at least a motivating factor in Defendant Ametek's decision to terminate.

57. Defendant Ametek's proffered reason (i.e., "a result of the current business circumstances") was a pretext for age discrimination.[2]

58. As a result of Defendant Ametek's violation(s) of the ADEA, Plaintiff Pierce suffered damages.

WHEREFORE, Plaintiff Robert Pierce, respectfully requests that judgment be entered in his favor and against Defendant Ametek Precitech, Inc. in an amount in excess of $75,000.00

---

[2] At the time of Plaintiff Pierce's termination, Christine Harrington claimed the termination was just a corporate decision and that Plaintiff Pierce was not being let go because of the quality of his work.

dollars, attorney fees, cost of litigation, interest and such other relief as this Honorable Court deems appropriate.

WOLPERT SCHREIBER MCDONNELL PC

DATE: 8/20/26 BY: ______________________________

THOMAS G. WOLPERT, ESQUIRE
*Attorney for Plaintiff Robert Pierce*

**VERIFICATION**

I, Robert Pierce, hereby verify that the statements set forth in this Civil Action Complaint are true and correct to the best of my knowledge, information, and belief. I understand that these statements are made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

DATE: August 19 2026

ROBERT PIERCE

# EXHIBIT "1"

Precitech

Sterling

April 4, 2022

Mr. Robert Pierce
c/o Masiello Employment
robertpierce742@gmail.com

Dear Robert,

It is with great pleasure that I confirm the following offer of fulltime employment to join AMETEK Precitech, Inc. I would like to offer you the position of Mechanical Assembler/Machine Builder on our 2nd Shift. This is a non-exempt position that will report to Shaughn Calkins, Supervisor and will be responsible for, but not limited to, the duties listed in the job description provided and other duties that may be assigned by management. This position has the following compensation and details:

1. This position will have an hourly base compensation of $24.00 per hour. Considering that you will be on 2nd Shift, you will also receive the shift premium differential to bring the hourly wage to $26.64 per hour. This position is non-exempt and subject to overtime compensation pursuant to State and Federal guidelines.
2. You shall immediately receive 8 days/64 hours (pro-rated from 10 days) of paid vacation (PTO) for calendar year 2022 & 2023. Starting January 1, 2024, you will receive 15 days per and starting January 1, 2025 you will receive 19 days per year and for each year thereafter. Vacation (PTO) is also applied to any sick days missed from work. All (PTO) must be used by the end of the calendar year as there is no provision for roll-over.
3. You shall also receive approximately 9 paid holidays per year (based on start date).
4. As with all new AMETEK Precitech employees, only your performance will be reviewed in 90 days.
5. Company sponsored Medical, Dental, Vision, Life, and Disability insurances. You are eligible to participate in these benefits on the first of the month following your date of hire.
6. The company offers a 401-K Savings Plan with a Retirement Feature. You are eligible to participate in the plans following completion of 31 days of continuous employment. The company solely contributes to the Retirement Feature. Contribution is a percentage of compensation based upon the employee's age and years of service. Employees are fully vested in the Retirement Feature after 3 years of service. The 401-K portion of the plan is tax deferred for employee contributions. The Company will match 33-1/3 cents of every dollar deferred up to 6% of compensation with a yearly maximum match of $1,200. Vesting for the employee and Company contribution in the 401-K Savings Plan takes place immediately. As a new employee, you will automatically be enrolled in the 401-(k) portion of the plan upon initial eligibility, at a contribution rate of 3% of gross wages.
7. You will be required to sign an AMETEK Confidentiality & Proprietary Agreement, Employee Non-Disclosure/Non-Competition and Invention Assignment Agreement, and an Arbitration Agreement as a condition of employment. You may ask to review these prior to accepting employment.
8. Employment with AMETEK Precitech, Inc. is accepted as employment at will and no employment contract, implied or explicit, exists. Employment may be terminated by the employee or the company at any time without regard to any length of time. Further, it is accepted that the company may unilaterally change its policies, practices, benefits and other conditions of employment at such times without any implied liability.
9. All employment with AMETEK Precitech, Inc. is contingent on presenting and maintaining legal authorization to work in the United States. Federal regulations state that an I-9 form must be completed within three days of hire, as we participate in the E-Verify Program. You will be directed

Precitech Sterling

to complete "Part A" of this process on-line prior to your hire date. Please bring two forms of an ID, one of which includes a photo, upon your first day of employment.

10. All new hires are asked to complete a form, as AMETEK participates in the Federal Work Opportunities Tax Credit Program and other Federal and State tax credit programs. The information you supply will be used by this company to complete Federal and State tax returns, and in no way will negatively impact any hiring decision. Your responses to the questions are voluntary and confidential to the employer's management and Federal, State and Local agencies. We ask that you complete the form on the same day that you receive this offer of employment.

    Instructions for Completing the Form:

    A. Log into: https://wotc.adp.com/?ametekinc

    B. Click the continue button and move through the screens, following instructions.

    Or: Call 1-800-237-3279 and provide Company Code: 119481 use touchtone keys to answer.

11. This offer of employment is also contingent upon completing and having a successful drug screen, background check, and employment reference checks prior to starting. Additionally, you will be required to provide proof of COVID-19 fully vaccinated status prior to starting, as AMETEK is a federal contractor, or agree to receiving at least the first shot of a 2-dose regimen prior to starting.

12. You have communicated, and the Company understands, that you have not entered into any contractual agreements that will impact your ability to work freely and legally for the company. By accepting this position, you acknowledge that you are not prohibited from doing any and all of the required duties nor are you under a non-compete contract with a former employer which would prohibit you from working in this capacity.

13. Your anticipated start date will be determined based on completion of background checks, but we are anticipating Monday, April 18, 2022. You should report to Human Resources for training at 8:00 am on your first day of work, as you will be training on first shift. You will later transition to 3:00 pm to 1:30 am four days per week (four 10-hour shifts) at which time you will receive the shift differential.

14. This letter contains the entire agreement and understanding between the parties hereto with respect to the Offer and other matters referred to herein. Please acknowledge receipt and acceptance of the Offer by signing a copy of this letter where indicated and returning to me. This offer is valid until Tuesday, April 5th by the close of business, after which time it will be void.

Should you have any questions pertaining to this Offer, please contact me at (603) 283-0468.

Sincerely, [signature] 4-4-2022

Alan Davis
Human Resource Manager,
AMETEK Precitech, Inc.

AGREED AND ACCEPTED: [signature] 4-4-2022
Employee Signature / Start Date / Today's Date

# EXHIBIT "2"

603-338-8820

# ROBERT PIERCE

*A Masiello Employment Candidate*
Contact: (603) 358-1000

Masiello
EMPLOYMENT SERVICES

## EMPLOYMENT

**Machine Maintenance** August 2020 – Present
Twin Craft
- Keep production lines running
- Troubleshoot machines
- Repair work
- Supply raw materials

**Production Worker** April 2018 – August 2020
Whelen Manufacturing – Charlestown, NH

**Forklift Operator** January 2015 – May 2020
C&S Wholesale Grocers – Brattleboro, VT
- Replenished racks with inventory for selectors
- Kept track of inventory of product

**Production and Quality Inspector** 2003 – 2014
BorgWarner, Morse Tec – Ithaca, NY
- Machine maintenance / Utility Oiler
- Fabrication and assembly of machine and automotive parts
- Preparation and finishing of parts for shipping
- Water treatment operator
- Deburring

**Warehouse Associate** 1998 – 2003
Americold Logistics – Liverpool, NY
- Prepared loads for shipping
- Unloaded and stored items for future shipping
- Cleaned, organized, and maintained freezer/racks as needed
- Kept track of inventory of product

## EDUCATION

High School Diploma – Brockport High School, Brockport, NY

## SKILLS

- Quality inspection
- Forklift certified

# EXHIBIT "3"

Precitech
ultra precision technology

# ANNUAL PERFORMANCE REVIEW
## *Non-Exempt EMPLOYEE*

## TO BE COMPLETED BY:

December, 2022 *(for 2022 year)*

**EMPLOYEE'S NAME: Robert Pierce**

**JOB TITLE:** ***Mechanical Assembler B***

**MANAGER/SUPERVISOR: Shaughn Calkins**

**REVIEWED BY:** **DATE: 12/6/22**

| Performance Factors | OS | ES | MS | BS | US |
|---|---|---|---|---|---|
| **JOB KNOWLEDGE & COMPREHENSIVE** Understands and is knowledgeable of the duties, methods and procedures required by the job. | | | X | | |
| **WORK QUALITY** Completes work assignments thoroughly and completely in an accurate, prompt and neat manner. | | | X | | |
| **PRODUCTIVITY** Produces required volume of work. Meets deadlines. | | | X | | |
| **ACCURACY/QUALITY** Identifies and corrects errors. Is careful, alert, paying attention to details of the job. | | | X | | |
| **INITIATIVE/PROBLEM SOLVING/DECISION MAKING** Performs with minimal supervision, acts promptly, seeks solutions to unexpected problems that arise on the job, makes practical routine decisions. | | | X | | |
| **INTERPERSONAL SKILLS** Gets along well with others and is respectful of co-workers. Acts as a team player, and responds appropriately to con-frontational situations. | | X | | | |
| **SAFETY** Employee performs work in a safe and efficient manner, and has not experienced any unsafe acts. | | X | | | |
| **ATTENDANCE & PUNCTUALITY** Dependable, arrives to work on time, adheres to break and meal schedules. | | X | | | |

**OVERALL SUMMARY OF PERFORMANCE/ADDITIONAL COMMENTS:**

List any areas needing Improvement:

Robert was brought onto the team in 2022. So far Rob has trained on multiple large frame sub-assemblies, 305L, and 350L box slides.

**Goals:**

Continue training on large frame machines. Build N700 from start to finish, get more experience with machine accessories.

**EMPLOYEE COMMENTS**

• Visit 2nd Shift Schedule after first machine build

[signature] 1-9-2023

**Employee's Signature** **Date**

[signature] 1/9/23

**Manager/Supervisor's Signature** **Date**

**Explanation of Performance Ratings**

**Outstanding (OS)**—Performance **SIGNIFICANTLY EXCEEDS** standards and expectations. Performance at this level would generally be recognized by peers, immediate supervision, and management. The individual suggests and initiates improvements/changes and through his/her own performance has materially enhanced effectiveness of the department or work area. Performance is generally not equaled by others (current and/or former employees in the same position).

**Exceeds Standards (ES)**—Performance **EXCEEDS** standards and expectations. Performance at this level would generally be recognized by peers and immediate supervision. Performance is characterized by notable skill, initiative and superior job knowledge. This individual's performance exceeds most other employees in the same position.

**Meets Standards (MS)**— and is **GOOD – not AVERAGE**. The individual performing at this level is considered a stable and skilled performer by co-workers and immediate supervision. Performance, at times, may be higher or lower but averages to the Fully Competent level.

**Below Standards (BS)**—Performance only meets the minimum standards and expectations. Performance is generally "acceptable" but improvement is needed and expected. Performance at this level may cause the department and/or co-workers some problems or inconveniences – or tends to diminish the department's effectiveness and/or productivity. Performance at this level is characterized as "just getting by." **Experienced employees who receive an overall rating "Needs Improvement" is not eligible for a merit increase.**

**Unsatisfactory Performance (US)**—Performance is inadequate (below minimum acceptable standards and expectations). Performance is causing problems/inconveniences/hardships for the department and/or co-workers and is having a negative impact on departmental effectiveness and/or productivity. This level of performance cannot be condoned or allowed to continue. **Employees with this rating will be placed on probationary status, not eligible for a merit increase and**

**reviewed again in 90 days**. At that time, the employee should either have improved their performance, and thereby move up in the appraisal range, or should be removed from the position.

# EXHIBIT "4"

Scanned

Precitech
ultra precision technology

# ANNUAL PERFORMANCE REVIEW
## *Non-Exempt EMPLOYEE*

## TO BE COMPLETED BY:

December, 2023 *(for 2023 year)*

**EMPLOYEE'S NAME: Robert Peirce**

**JOB TITLE: Maintenance Tech**

**MANAGER/SUPERVISOR: Andrew Paquette**

**REVIEWED BY: Danny Sawyer II DATE: 1/9/2024.**

# *SEPARATION AGREEMENT AND RELEASE*

******To be used for non-management employees only. Non-management employees are those who have no authority to hire, fire or discipline employees*******

This agreement between AMETEK, Inc. ("AMETEK" or "Company") and Robert Pierce ("Employee") governs the terms and conditions related to the Employee's separation and termination of employment with AMETEK ("Agreement"). In consideration of the covenants and mutual promises herein, AMETEK and Employee agree as follows:

**1.** ***Termination of Employment***

Employee's employment with AMETEK is terminated, effective July 23rd, 2025, (the "Termination Date"). Employee acknowledges receipt of this agreement on July 23rd, 2025, (the "Severance Notification Date").

Employee acknowledges that, as of the date of execution of this Agreement, which may not be earlier than the Employee's last day of employment, Employee is not entitled to any other compensation or employment benefits, including but not limited to further accrued vacation and retirement benefits, except as noted in Paragraph 2. Whether or not Employee signs this Agreement, all accrued, but unused, vacation pay as of the Termination Date will be paid to Employee.

**2.** ***Separation Benefits***

In consideration for the terms and conditions specified herein, including Employee's release of claims and covenant not to sue as set forth in this Agreement, AMETEK agrees to provide enhanced benefits to Employee. Employee understands the separation benefits offered in this "Separation Benefits" paragraph include additional consideration above the value of benefits to which Employee is already entitled, including the following:

a. Employee will receive six (6) weeks of pay as severance payments, from the Termination Date, provided Employee complies with and does not revoke this Agreement. Severance payments will be calculated at the rate equal to the Employee's salary as of the Severance Notification Date. Employee will not accrue any other benefits or bonus eligibility during this time. Employee acknowledges that a condition for receipt of these enhanced benefits shall be execution, compliance with and non-revocation of this Agreement as of the Termination Date.

b. Employee will be entitled to exercise their rights under COBRA to continue their health coverage under the AMETEK, Inc. Health and Welfare Plan (the "Plan") in accordance with applicable law. Information will be provided to Employee under separate cover by AMETEK's third-party COBRA administrator within 2-4 weeks of the Termination Date. If Employee elects COBRA continuation coverage, AMETEK will provide the company paid portion of the premium for COBRA continuation coverage through September 30th, 2025, and Employee will be responsible for the employee paid portion of the premium for COBRA continuation coverage. Beginning October 1st, 2025, Employee will be responsible for all portions of the COBRA continuation coverage elected.

**<u>If Employee is Medicare Eligible, please note the following:</u>**

Employee's Signature — Date 1-11-24

Manager/Supervisor's Signature — Date 1/11/24

**Explanation of Performance Ratings**

**Outstanding (OS)**—Performance **SIGNIFICANTLY EXCEEDS** standards and expectations. Performance at this level would generally be recognized by peers, immediate supervision, and management. The individual suggests and initiates improvements/changes and through his/her own performance has materially enhanced effectiveness of the department or work area. Performance is generally not equaled by others (current and/or former employees in the same position).

**Exceeds Standards (ES)**—Performance **EXCEEDS** standards and expectations. Performance at this level would generally be recognized by peers and immediate supervision. Performance is characterized by notable skill, initiative and superior job knowledge. This individual's performance exceeds most other employees in the same position.

**Meets Standards (MS)**— and is **GOOD – not AVERAGE**. The individual performing at this level is considered a stable and skilled performer by co-workers and immediate supervision. Performance, at times, may be higher or lower but averages to the Fully Competent level.

**Below Standards (BS)**—Performance only meets the minimum standards and expectations. Performance is generally "acceptable" but improvement is needed and expected. Performance at this level may cause the department and/or co-workers some problems or inconveniences – or tends to diminish the department's effectiveness and/or productivity. Performance at this level is characterized as "just getting by." **Experienced employees who receive an overall rating "Needs Improvement" is not eligible for a merit increase.**

**Unsatisfactory Performance (US)**—Performance is inadequate (below minimum acceptable standards and expectations). Performance is causing problems/inconveniences/hardships for the department and/or co-workers and is having a negative impact on departmental effectiveness and/or productivity. This level of performance cannot be condoned or allowed to continue. **Employees with this rating will be placed on probationary status, not eligible for a merit increase and reviewed again in 90 days**. At that time, the employee should either have improved their performance, and thereby move up in the appraisal range, or should be removed from the position.

# EXHIBIT "5"

# Certified Powered Industrial Truck Operator

This certifies that

ROB PIERCE

has successfully completed the




## Toyota Operator Safety Training Program

Company Name: AMETEK PRECITECH

Formal Instruction Instructor: ANDREW PAQUETTE




Practical Training Instructor: ANDREW PAQUETTE

Evaluation conducted by: ANDREW PAQUETTE

Certified by: ANDY PAQUETTE Date: 8/16/23

Class(es) of Industrial Truck: I, IV, V







# EXHIBIT "6"

Precitech Sterling

July 23rd, 2025

Robert Pierce
76 Proctor Road
Alstead, NH 03602

Dear Robert,

As you know, our company has been facing some significant challenges recently. After careful consideration and review, we have had to make some tough decisions to ensure the long-term sustainability of our organization. Unfortunately, this means that your role has been affected and is being eliminated. This decision is not a reflection of your performance or contributions, which have been greatly valued. It is purely a result of the current business circumstances.

This letter will confirm your separation of employment with AMETEK, Inc., together with its subsidiaries and divisions (AMETEK), effective July 23rd, 2025. You are entitled to receive or exercise the following benefits:

1. **Compensation**
   You will receive a paycheck on August 1st for your hours worked and any vacation time accrued by your termination date. Your severance will begin on July 24th, once the separation and release agreement is fully executed.

2. **Savings Plan**
   If you are a current participant in an AMETEK 401(k) Plan, you may continue to make contributions through your final check. If you have an outstanding loan from any Plan, that loan must be repaid within 90 days of your termination date. Contact Fidelity the 401(k) provider directly at their website www.netbenefits.com to determine options for handling your account.

3. **Health Insurance**
   Your health insurance coverage, including Medical, Dental, and Vision if elected, will end at midnight, July 31st, 2025. Current law (COBRA) allows employees and qualified dependents to continue their prior elected group healthcare: medical, dental, and vision (if elected) coverage for up to eighteen (18) months following the date of termination. You will be considered COBRA eligible on August 1st, 2025.

4. **Other Benefits Coverage**
   If you are currently participating in AMETEK's short-term and/or long-term disability plans, your coverage will terminate effective at midnight, July 23rd, 2025. Your employee and dependent life (if you are currently participating) insurance coverage(s) will terminate on July 23rd, 2025. You may be eligible to convert your life insurance coverage(s) to individual policies. If interested, contact Human Resources.

5. **Business Ethics, Confidentiality, Non-Disclosure, Non-Compete, Non-Solicitation**
   As an employee of AMETEK Precitech, Inc., you signed the Confidentiality and Proprietary Agreement, and the Employee Non-Disclosure, Non-Competition, and Invention Assignment Agreements. Now that you are no longer employed by AMETEK, you are reminded that these agreements remain in effect in terms of disclosing company propriety and confidential information, trade secrets, customer information, and the solicitation of AMETEK Precitech employees and customers within the present scope of AMETEK's business.

We wish you the best in your future endeavors.

Sincerely,

Jennica Dunnell
Human Resource Business Partner
AMETEK Precitech Sterling, Inc.

## *SEPARATION AGREEMENT AND RELEASE*

******To be used for non-management employees only. Non-management employees are those who have no authority to hire, fire or discipline employees*******

This agreement between AMETEK, Inc. ("AMETEK" or "Company") and Robert Pierce ("Employee") governs the terms and conditions related to the Employee's separation and termination of employment with AMETEK ("Agreement"). In consideration of the covenants and mutual promises herein, AMETEK and Employee agree as follows:

**1.** ***Termination of Employment***

Employee's employment with AMETEK is terminated, effective July 23rd, 2025, (the "Termination Date"). Employee acknowledges receipt of this agreement on July 23rd, 2025, (the "Severance Notification Date").

Employee acknowledges that, as of the date of execution of this Agreement, which may not be earlier than the Employee's last day of employment, Employee is not entitled to any other compensation or employment benefits, including but not limited to further accrued vacation and retirement benefits, except as noted in Paragraph 2. Whether or not Employee signs this Agreement, all accrued, but unused, vacation pay as of the Termination Date will be paid to Employee.

**2.** ***Separation Benefits***

In consideration for the terms and conditions specified herein, including Employee's release of claims and covenant not to sue as set forth in this Agreement, AMETEK agrees to provide enhanced benefits to Employee. Employee understands the separation benefits offered in this "Separation Benefits" paragraph include additional consideration above the value of benefits to which Employee is already entitled, including the following:

a. Employee will receive six (6) weeks of pay as severance payments, from the Termination Date, provided Employee complies with and does not revoke this Agreement. Severance payments will be calculated at the rate equal to the Employee's salary as of the Severance Notification Date. Employee will not accrue any other benefits or bonus eligibility during this time. Employee acknowledges that a condition for receipt of these enhanced benefits shall be execution, compliance with and non-revocation of this Agreement as of the Termination Date.

b. Employee will be entitled to exercise their rights under COBRA to continue their health coverage under the AMETEK, Inc. Health and Welfare Plan (the "Plan") in accordance with applicable law. Information will be provided to Employee under separate cover by AMETEK's third-party COBRA administrator within 2-4 weeks of the Termination Date. If Employee elects COBRA continuation coverage, AMETEK will provide the company paid portion of the premium for COBRA continuation coverage through September 30th, 2025, and Employee will be responsible for the employee paid portion of the premium for COBRA continuation coverage. Beginning October 1st, 2025, Employee will be responsible for all portions of the COBRA continuation coverage elected.

**<u>If Employee is Medicare Eligible, please note the following:</u>**

Employee understands that if they are eligible for Medicare (Part A or B) at the time of termination and enroll in COBRA continuation coverage, Medicare coverage will generally be "primary" and COBRA coverage under the Plan will be "secondary." This means that, if you are eligible for Medicare, our Plan assumes that you are enrolled in Medicare, and COBRA coverage (if elected) will pay secondary to Medicare. Consequently, if Employee elects COBRA and **is eligible for Medicare but does not actually enroll in Medicare,** COBRA may only pay for a small portion of the health care services Employee receives, and Employee may incur significant out-of-pocket medical expenses.

c. AMETEK will provide Employee with outplacement services for a period of one (1) month. Details of the program can be obtained from the Human Resources Department. Outplacement services will begin immediately following the date of this signed Agreement.

d. If Employee decides to seek unemployment compensation benefits, AMETEK will not oppose Employee's application for unemployment compensation. AMETEK makes no representations concerning Employee's eligibility for unemployment compensation. Employee understands and acknowledges that any determination as to Employee's eligibility for unemployment compensation is made solely by the state agency to which Employee applies for such benefits.

e. AMETEK acknowledges and agrees that the Employee shall have whatever rights to which Employee is entitled as provided by the AMETEK stock options and/or restricted stock plan(s) pursuant to which Employee received stock options or restricted stock, if any.

**3. *Taxes***

Employee agrees that Employee is responsible for the payment of any and all federal or state income taxes and the Employee share of any FICA taxes that may be due as a result or consequence of the payments made under this Agreement. AMETEK agrees that it is responsible for payment of the employer share of all taxes only, including FICA and FUTA taxes that may be due as a result of the payments made under this Agreement. The parties acknowledge and agree that the severance payment shall be treated as wages for the purpose of determining withholdings and taxes.

**4. *Return of Company Property***

Employee agrees that on the effective date of Employee's termination from AMETEK, Employee will return to AMETEK any and all AMETEK property or equipment in Employee's possession, including but not limited to: any computer, hard or thumb drives, paper files, printer, fax, phone or other communication device, credit card, ID badge and keys. Employee agrees to update all references to employment at AMETEK on all of Employee's social media sites and profiles, including but not limited to LinkedIn, to reflect the effective date of termination from AMETEK. Employee agrees that as of the Termination Date, Employee will have no outstanding balance on Employee's corporate credit card for which appropriate accounting paperwork has not been submitted consistent with AMETEK policies. Employee further agrees that Employee will update all of Employee's social medial profiles and sites, including, but not limited to LinkedIn, to remove all references to AMETEK as Employee's current employer.

If Employee has a company owned vehicle, Employee must return Employee's Company vehicle to AMETEK within four (4) weeks of the Termination Date, unless alternate arrangements are agreed upon by AMETEK.

**5.** ***Covenant Not to Sue, Waiver, and General Release***

In consideration for the enhanced benefits made by the Company:

a. Employee covenants that, except for a proceeding brought to enforce this Agreement, Employee will not at any time commence, maintain, prosecute, participate in as a party, or permit to be filed by any other person on Employee's behalf, any action, suit, or proceeding (judicial, administrative, arbitral, or other) against any of the Releasees (defined within) with respect to (i) Employee's employment with the Company, the terms and conditions of such employment, including compensation, or the termination of Employee's employment, or (ii) any act, event, or occurrence, or any alleged failure to act, up to and including the Effective Date of this Agreement. Employee represents that, to the best of Employee's knowledge, no such action, suit, or proceeding has been commenced as of the Effective Date of this Agreement and that, if any such action, suit, or proceeding is determined to have been commenced, Employee will take prompt measures to withdraw or terminate it. Employee represents and warrants that, as of the date that Employee signs this Agreement, Employee has not asserted a claim of discrimination, retaliation or harassment or any other claim, including for sexual harassment or sexual discrimination, against any of the Releasees (as defined below). This paragraph shall not apply to the extent prohibited by law.

Employee, for Employee and Employee's heirs, executors, administrators, successors, and assigns (collectively "Releasor"), forever releases and discharges AMETEK and any and all of its past or present parents, subsidiaries, divisions, affiliated entities, predecessors, successors and assigns, and any and all of its or their employee benefit and/or pension plans or funds, and any of the foregoing entities' past or present officers, directors, stockholders, agents, trustees, administrators, employees or assigns (whether acting as agents for such entities or in their individual capacities) (collectively "Releasees"), from any and all claims, demands, causes of action, and liabilities of any kind whatever (upon any legal or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise, and including but not limited to any claims for compensatory or punitive damages, injunctive or equitable relief, or for attorneys' fees, or costs or disbursements of any kind), whether known or unknown, which Releasor even had, now has, or may hereafter have against Releasees by reason of any action, omission, transaction, or occurrence from the beginning of time and occurring up to and including the execution date of this Agreement. It is the understanding and agreement of the parties that the release provided for by this sub-paragraph shall be a general release in all respects to the maximum extent permitted by law. Without limiting the generality or force or effect of the foregoing, this release shall release Releasees from any and all claims against Releasees arising, directly or indirectly, from (i) Employee's employment with Releasees; (ii) the terms and conditions of such employment, including compensation, breaks, wage notices, and pay stubs and all other wage/hour or wage payment claims; (iii) the termination of Employee's employment with Releasees; (iv) the negotiation and entry into this Agreement, and/or the terms of this Agreement; (v) any and all claims under the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 (§§ 1981 and 1981A), the Americans with Disabilities Act ("ADA"), the Equal Pay Act ("EPA"), the Family Medical Leave Act

("FMLA"), the Employee Retirement Income Security Act of 1974 ("ERISA") (excluding claims for accrued, vested benefits under any employee benefit plan of the Company in accordance with the terms of such plan and applicable law), the Uniformed Services Employment and Reemployment Rights Act of 1994, the National Labor Relations Act, the Federal Worker Adjustment and Retraining Notification Act, and any state equivalent, the Occupational Safety and Health Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the Lilly Ledbetter Fair Pay Act, the Health Insurance Portability and Accountability Act (HIPAA), the Genetic Information Non-Discrimination Act of 2008, any personal gain with respect to any claim under the qui tam provisions of the False Claims Act, and/or any other federal, state or local law (statutory or decisional), regulation, or ordinance, up to and including the execution date of this Agreement.

b. This paragraph shall not apply to (i) Employee's vested rights and benefits under any of the Company's pension or welfare benefit plans; (ii) Employee's claims for Workers' Compensation benefits, unemployment insurance benefits and statutorily mandated benefits; (iii) Employee's rights under this Agreement; and (iv) any other claims not waivable under the law.

c. Employee represents and agrees that prior to executing this Agreement Employee has disclosed to AMETEK in writing any known work-related injuries and/or illnesses incurred. This paragraph does not operate as a waiver of rights under the workers' compensation laws of the state of Employee's residence, to the extent they are applicable.

d. If Employee violates this release by suing AMETEK or any of the Released Parties or causing AMETEK or any of the Released Parties to be sued, Employee agrees to pay all costs and expenses of defending against the suit incurred by AMETEK or any of the Released Parties, including reasonable attorneys' fees, except to the extent that paying such costs and expenses is prohibited by law or would result in the invalidation of the foregoing release.

6. ***Acknowledgement of Waiver of Claims Under ADEA***

Employee acknowledges that Employee is hereby waiving and releasing any rights Employee may have under the ADEA. In connection with this ADEA release, Employee agrees that (i) Employee has read and understands this Agreement; (ii) Employee is hereby entering into this ADEA waiver knowingly and voluntarily, (iii) the ADEA waiver does not apply to any rights or claims that may arise under the ADEA after the date Employee signs this Agreement, (iv) the consideration given for the release of the ADEA claims is in addition to anything of value to which Employee was already entitled, and (v) Employee has been advised by this writing that:

a. Employee should consult with an attorney prior to executing this Agreement;

b. Employee has up to forty-five (45) days within which to consider and sign this Agreement, but Employee shall not sign this Agreement prior to the Termination Date. If Employee signs this Agreement before the 45-day time period expires, Employee does so knowingly and voluntarily;

c. Employee and AMETEK agree that changes to AMETEK's offer contained in this Agreement, whether material or immaterial, will not restart the forty-five (45) day consideration period provided for above; and

d. Employee can revoke this Agreement within 7 days of signing and the Agreement does not become effective until that 7-day period has passed. This Agreement shall be effective on the eighth (8th) day after Employee signs it, assuming no revocation has been received by Ametek as set forth herein ("Effective Date"). To revoke this Agreement, contact Ron Oscher, CAO (Ron.Oscher@ametek.com).

7. ***Reports to Government Entities***

Nothing in this Agreement restricts or prohibits Employee from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including the U.S. Equal Employment Opportunity Commission, the New Hampshire fair employment practices agency, the Department of Labor, the National Labor Relations Board, the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of state or federal law or regulation. However, to the maximum extent permitted by law, Employee is waiving Employee's right to receive any individual monetary relief from the Company or any others covered by the General Release set forth in this Agreement resulting from such claims or conduct, regardless of whether Employee or another party has filed them, and in the event Employee obtains such monetary relief the Company will be entitled to an offset for the payments made pursuant to this Agreement. This Agreement does not limit Employee's right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of law. Employee does not need the prior authorization of the Company to engage in conduct protected by this paragraph, and Employee does not need to notify the Company that Employee has engaged in such conduct.

Please take notice that federal law provides criminal and civil immunity to federal and state claims for trade secret misappropriation to individuals who disclose a trade secret to their attorney, a court, or a government official in certain, confidential circumstances that are set forth at 18 U.S.C. §§ 1833(b)(1) and 1833(b)(2), related to the reporting or investigation of a suspected violation of the law, or in connection with a lawsuit for retaliation for reporting a suspected violation of the law.

8. ***Rehire, No Dual Compensation***

Employee will not seek to be rehired by, or seek a contractual or other relationship (e.g., through a staffing agency) with, AMETEK, its affiliates, subsidiaries or divisions, unless otherwise prohibited by law. To the fullest extent permitted by law, if Employee is subsequently rehired by or otherwise retained to provide services to AMETEK, its affiliates, subsidiaries, or divisions, while receiving severance payments as listed under section 2(a) of this agreement, then Employee agrees that severance payments as listed herein will cease immediately and be forfeited as a result of Employee obtaining new employment with AMETEK, its affiliates, subsidiaries, or divisions. Employee agrees that such actions would not constitute a violation of any law, ordinance, or regulation.

9. ***Breach by Employee***

AMETEK's obligations to Employee after the Effective Date are contingent on the Employee complying with Employee's obligations under this Agreement. Any material breach of this Agreement by the Employee will result in the immediate cancellation of AMETEK's obligations under

this Agreement and of any benefits that have been granted to the Employee by the terms of this Agreement, except to the extent that such cancellation is prohibited by law or would result in the invalidation of the foregoing release.

10. ***Satisfactory Terms of Agreement***

The parties acknowledge that through their execution of this agreement, they are agreeing on terms which are satisfactory to both parties. All matters that may have arisen regarding Employee's employment with Ametek have been satisfactorily resolved by the parties. Moreover, nothing in this Agreement prohibits Employee from discussing with any person or persons wages, hours or other terms and conditions of employment, nor from engaging in lawful protected activity with or on behalf of coworkers regarding the same.

11. ***Reimbursement of Any Monies***

Any amounts which the Employee owes AMETEK, or any affiliates of AMETEK, including vacation overpayment and salary over-payments, will be offset and deducted from the Employee's final paycheck from AMETEK and/or from the separation payments, except where prohibited by applicable federal, state, or local law.

12. ***Cooperation***

Employee will cooperate fully with AMETEK in connection with any and all existing or future litigation or investigation brought by or against AMETEK or any of the Releasees, whether administrative, civil or criminal in nature, in which and to the extent AMETEK deems the Employee's cooperation necessary. AMETEK will reimburse Employee for reasonable out-of-pocket expenses incurred as a result of such cooperation.

13. ***No Other Amounts Due***

Employee acknowledges that, except as expressly provided in this Agreement, Employee will not receive any additional compensation, severance, or benefits from AMETEK after the Termination Date. Employee further represents and affirms that Employee has been paid and/or received all leave (paid or unpaid), vacation pay, compensation, wages, bonuses, commissions, and/or benefits to which you may be entitled and that no other leave (paid or unpaid), vacation pay, compensation, wages, bonuses, commissions and/or benefits are due to Employee, except as provided for in this Agreement. Employee also represents that she/he has been reimbursed for all necessary business expenses she/he incurred during her/his employment with the Company.

14. ***Employee Consideration of Agreement***

Employee hereby represents and/or acknowledges to AMETEK that: (a) Employee has been advised by AMETEK to consult an attorney before signing this Agreement; (b) Employee's choice to accept this Agreement has been made on a voluntary basis without duress, coercion or undue influence; (c) except as specified in this Agreement no other promise, inducement, agreement or understanding of any kind or description whatsoever has been made with or to Employee by any person or entity to cause Employee to sign this Agreement; (d) Employee has not filed any charges, claims, or lawsuits against AMETEK involving any aspect of Employee's employment which have not been terminated as of the date this Agreement is signed; (e) except with regard to the separation

benefits described above, all compensation and benefits due Employee, whether by contract or by law, have been paid in full, and Employee has been provided all rights and benefits to which Employee is entitled by AMETEK.

**15.** ***Reformation and Severability***

If any term, provision, covenant, or restriction of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of this Agreement and the other terms, provisions, covenants and restrictions here of shall remain in full force and effect and shall in no way be affected, impaired or invalidated. The parties agree the court shall modify and reform such provision to the greatest extent possible.

**16.** ***Entire Agreement***

This Agreement sets forth the entire agreement and understanding between Employee and AMETEK and supersedes all prior agreements and understandings concerning the subject matter of this Agreement, except for the Mutual Arbitration Agreement dated April 18th, 2022 and the Confidentiality and Non-Disclosure Agreement dated April 18th, 2022, which are incorporated by reference herein and remain in full force and effect. This Agreement may be changed only with the written consent of both parties and only if both parties make express reference to this Agreement. The parties have not relied on any oral statements that are not included in this Agreement. Any modifications to this Agreement must be in writing and signed by Employee and an authorized employee or agent of AMETEK. In addition, other than with respect to its obligations hereunder, AMETEK denies any liability of any kind or type owing Employee and this Agreement shall not be construed as an admission of liability or wrongdoing of any kind.

**17.** ***Dispute Resolution***

Employee agrees as part of the consideration for compensation paid to Employee pursuant to this Agreement that all claims, disputes or complaints arising under this Agreement, including challenges to the enforceability of this Agreement, shall be subject to resolution exclusively by final and binding individual arbitration pursuant to the terms/procedures of the Mutual Arbitration Agreement (including its class, collective and representative claim waiver) rather than in Court, except that Employee and AMETEK shall bear equally the costs of any such arbitration filing/proceedings (including all filing, administration, forum and arbitrator fees) and the parties shall bear their own attorneys' fees and remaining costs such as deposition transcripts, travel, duplicating, expert and other litigation costs.

[***Binding Effect***

This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, and assigns.

**18.** ***Applicable Law***

This Agreement shall be construed, interpreted and applied in accordance with the laws of the Commonwealth of Pennsylvania without regard for choice-of-law provisions.

***I have read this Agreement and I understand all of its terms. I understand that I am waiving unknown claims and I am doing so intentionally. I enter into and sign this Agreement knowingly and voluntarily, with full knowledge of what it means, and I have not been subjected to undue influence or duress.***

**Signatures:**

Employee: Date:

On behalf of AMETEK, Inc. Date:
**(PRINT NAME & SIGN)**

## EXHIBIT A

## OLDER WORKERS BENEFIT PROTECTION ACT DISCLOSURE NOTICE

The Older Workers Benefit Protection Act (OWBPA) requires that employers provide specific information to employees who are 40 years of age or older and asked to execute a release of claims in connection with a group termination program. This document provides this information.

All employees in the Keene NH, AMETEK Precitech BU, were considered for the group termination program. In determining who should be retained and who should be selected for the group termination program, the Company generally considered the following factors: staffing levels needed within department, number of persons needed to perform specific position responsibilities, skill sets and experience. Note that all eligibility factors do not necessarily apply to each employee selected. All employees selected for the group termination program will be offered an exit incentive. The following is a list of the ages and job titles of employees who were and were not selected for termination and offered consideration for signing a waiver

| Job Title | Age | Selected | Not Selected |
|---|---|---|---|
| Skilled Craft | 27,47,47,64,34,24,64,37,30,40,39,55,63,70,27,43,24,49,38,37,52,62,45,29,39,43,40,66,40,63 | 6 | 24 |
| Admin. Support | 32, 34, 41, 45, 38 | 0 | 5 |
| Techs | 41, 66 ,62 ,29 ,64 ,62 ,43 ,47 35, 55, 34, 36, 29, 61, 60, 44, 23, 29, 35, 53, 60, 26, 26, 32, 36, 30, 28 | 1 | 27 |
| Professionals | 29, 29, 44, 69, 60, 28, 35, 45, 62, | 1 | 8 |
| Management | 64, 33, 61, 35, 58, 34, 60, 66, 60 | 1 | 8 |
| Officials / Administrator | 34, 40 | 0 | 2 |

# EXHIBIT "7"

# Wolpert Schreiber McDonnell P. C.

THOMAS G. WOLPERT*
DAVID E. SCHREIBER
PATRICK D. McDONNELL*
J. CHRISTINE LERRO-RYAN

**ATTORNEYS AT LAW**
**527 Main Street**
**Royersford, PA 19468**
**(610) 792-3304**
**(610) 792-3306 Facsimile**
**www.WSM.law**

***also with offices at:***
1204 Clearbrook Rd.
West Chester, PA 19380
(610) 429-2600
*Licensed in New Jersey

***Sender's E-mail Address:***
**thomas@WSM.law**

September 11, 2025

Equal Employment Opportunity Commission
Philadelphia Field Office
801 Market Street, Suite 1000
Philadelphia, PA 19107-3126

**Re: Complainant – Robert Pierce**
**Charge of Employment Discrimination**

Dear Sir/Madam:

Please be advised that this office has been retained by Complainant, Robert Pierce (hereinafter "Mr. Pierce"). Mr. Pierce wishes to file a Charge of Employment Discrimination under the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621, et. seq.) against his former employer Ametek, Inc. (hereinafter "Ametek"). Effective July 23, 2025, Mr. Pierce was terminated by his employer after three and a half (3 ½ ) years of employment. Ametek's decision to terminate Mr. Piece's employment was motivated by discriminatory animus; i.e., age. Mr. Piece, as of July 23, 2025, was sixty-two (62) years of age.

Attached hereto is a more detailed Charge of Employment Discrimination. Should your office need any further information or documentation, kindly advise the undersigned. Thank you for your time and attention to this filing.

Very truly yours,

THOMAS G. WOLPERT

TGW/tlr
Enclosure
cc: Robert Pierce (w/enclosures)(via email)

# CHARGE OF EMPLOYMENT DISCRIMINATION

Complainant
Mr. Robert Pierce
76 Proctor Road
Alstead, NH 03602
(T) 603-309-4172
DOB:

Employer:
Ametek, Inc.
1100 Cassatt Road
Berwyn, PA 19312-1177

Discrimination Based On:
Violation of the Age Discrimination in Employment Act of 1967 (29 U.S.C.A. § 621, et. seq.)("ADEA).

Date of Discrimination:
July 23, 2025 (date of termination)

Particulars (Summary):

Complainant, Robert Pierce (hereinafter "Pierce"), was a Mechanical Assembler/Machine Builder employed by Ametek, Inc. (hereinafter "Ametek"). Ametek's headquarters is located here in Pennsylvania at the address listed above. Pierce began employment with Ametek on April 18, 2022, at its subsidiary located in New Hampshire; i.e., Ametek Precitech, Inc., 44 Blackbrook Road, Keene, New Hampshire 03431. *See,* Hiring Letter, dated April 4, 2022, attached hereto as Exhibit "1."

By trade, Pierce had, thirteen (13) plus years, experience in maintaining machines. The employment at Ametek was for a position on the assembly line. Upon hiring, Ametek was to assign Pierce to a trainer to train him to be a Mechanical Assembler/Machine Builder. However, on or about Pierce's first day, he was assigned to assist the individual responsible for general maintenance around the Ametek Precitech facility. Pierce assisted with such things as painting, running errands, general maintenance, etc.

Shortly after his employment with Ametek, Pierce noticed that an influx of high school age/college age individuals were being hired and immediately assigned to trainers for employment as Mechanical Assemblers/Machine Builders; whenever, Pierce questioned Ametek about being assigned a trainer he was generally told no trainer was available. From April of 2022 to July 23, 2025, Pierce received several reviews which were general in nature and resulted in no issues being brought to his attention regarding the quality of his work. Pierce was qualified (had he been trained as promised by Ametek) to perform the responsibilities of a Mechanical Assembler/Machine Builder.

On July 23, 2025, Pierce was presented with a Separation Letter along with a Separation Agreement & Release, by Jennica Dunnell, Human Resource Business Partner, for Ametek. *See,* 7-23-25 Separation Letter (and Separation Agreement & Release), attached hereto as Exhibit "2." Pierce did not sign this document. According to the Separation Letter, Pierce was being terminated as "a result of the current business circumstances." Id. Ametek's Separation

Agreement & Release asked Pierce to waive any and all of Pierce's rights or remedies against Ametek in connection with Pierce's employment: in particular, any rights and/or remedies under the ADEA. At the time of Pierce's termination, several other employees of Ametek Precitech, Inc. were also terminated. Of the eight (8) or nine (9) employees terminated, most, if not all, were over the age of sixty (60). Upon information and belief, the duties and responsibilities of the terminated employees were either distributed among the then remaining younger employees and/or said younger employees were promoted to replace those older individuals terminated.

Pierce believes, and therefore avers, that Ametek has discriminated against its qualified employee, Pierce, based on his age: 62. The reason for Pierce's termination (i.e., his age) was at least a motivating factor in Ametek's decision to terminate. Moreover, Ametek's proffered reason (i.e., "a result of the current business circumstances") was a pretext for age discrimination. Hence, Pierce refused to waive his rights under the ADEA and the Separation Agreement is included here simply to complete the EEOC's file.

**** I want this Charge filed with both the EEOC and the State or local Agency, if any (either the Pennsylvania Human Relations Commission or the New Hampshire Commission for Human Rights). I will advise the agencies if I change may address or phone number and I will cooperate fully with them in the processing of my Charge in accordance with their procedures****

I declare under penalty of perjury that the above is true and correct.

DATE: 9/3/25

Robert Pierce
*Charging Party Signature*

Prepared by:

Thomas G. Wolpert, Esquire
WOLPERT SCHREIBER MCDONNELL PC
527 Main Street
Royersford, PA 19468
(T) 610-792-3304
(F) 610-792-3306
Email: thomas@WSM.law

# EXHIBIT "8"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/06/2026

**To:** Mr. Robert J. Pierce
76 Proctor Road
Alstead, NH 03602
Charge No: 530-2025-10028

EEOC Representative and phone: Legal Unit
267-589-9707

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2025-10028.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
08/06/2026

Karen McDonough
Deputy District Director

**Cc:**
NA NA
44 Black Brook Road
Keene, NH 03431

Robert F Jensen
Ametek, Inc. c/o Littler Mendelson, P.C.
2301 McGee Street Suite 700
Kansas City, MO 64108

Thomas G Wolpert Esq.
Wolper Schreiber McDonnell PC
527 Main Street
Royersford, PA 19468

Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2025-10028 to the District Director at JAMIE WILLIAMSON, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2025-10028 to the District Director at JAMIE WILLIAMSON, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.